UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEANN JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cv-0914-DFH-JMS |
| | ) | |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LeAnn Jenkins was an hourly employee of Ford Motor Company from
September 1999 until she was terminated on December 15, 2005.  In September
2005, she requested and received medical leave pursuant to the Family and
Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, as well as short-term disability
benefits.  While Jenkins was on leave, the short-term disability provider became
suspicious that she was working for JL Squared, a company owned by Jenkins
and her husband.  The short-term disability company hired a private investigator
who reported that Jenkins appeared to be working while on leave.  The short-term
disability provider reported the findings to Ford.  Ford ordered Jenkins to return
to work on December 15, 2005, when it interviewed her about the alleged second
job and then fired her.  Jenkins brought a retaliation claim under the FMLA.  Ford
now moves for summary judgment.  As explained below, the court grants Ford's
motion because the undisputed facts show that Ford honestly believed that

Jenkins was working for JL Squared while she was on FMLA leave.   Under controlling Seventh Circuit precedents, that honest belief is sufficient to defeat her claim even if she was not actually moonlighting while on medical leave.   See *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 680-81 (7th Cir. 1997); *Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986 (7th Cir. 2006); *Vail v. Raybestos Products Co.*, 533 F.3d 904, 909 (7th Cir. 2008).

### *Summary Judgment Standard*

Summary judgment must be granted if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual issue is genuine if there is sufficient evidence for a reasonable jury to find in favor of the non-moving party.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is material if resolving the factual issue might change the suit's outcome under the governing law.  *Id.*  The motion should be granted only if no rational fact-finder could find in favor of the non-moving party.  *Id.* at 249.

When ruling on the motion, the court must view all the evidence in the record in the light most favorable to the non-moving party and must resolve all factual disputes in the non-moving party's favor.  The essential question is "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Factual Background

Defendant Ford hired plaintiff LeAnn Jenkins in September 1999 as a production checker in the Steering Components plant in Indianapolis. She remained in that position continuously until her termination in December 2005. Jenkins had no written disciplinary warnings and no negative job reviews. Jenkins Decl. ¶16. During her employment she was a member of the United Auto Workers, and her terms and conditions of employment were controlled by the collective bargaining agreement between Ford and the UAW.

Throughout 2005, Jenkins had medical problems that caused her to miss substantial time at work. She missed three days in January, one week in March, and five weeks between June 13 and July 17. Jenkins Dep., Ex. 1. She then requested leave on September 27, 2005 for conditions that included a persistent cough and abdominal pain. Jenkins Dep. 83. On October 17, 2005, she applied for short-term disability through UniCare, a third-party administrator.

UniCare assigned Cynthia Rodriguez to be the adjuster on Jenkins' claim. Rodriguez has testified that she called Jenkins on October 25th and left a voice mail message. Jenkins responded three days later with a call-back number.

Rodriguez called that number, which was the office number for JL Squared, a metal fabricating company owned by Jenkins and her husband.  The person answering the phone told Rodriguez that Jenkins was "on break."  Rodriguez Decl. ¶5.  Jenkins disputes that she ever gave Rodriguez the phone number of JL Squared.  Jenkins Decl. ¶18.

Rodriguez was suspicious of the answer that Jenkins was "on break" because recipients of short-term disability were required to be "wholly and continuously disabled."  As a result, UniCare hired a private investigator, MJM Investigations, to conduct surveillance.  MJM submitted a series of reports on its observations.  Ford sets forth two findings that it found particularly relevant. First, MJM reported that on November 2, 2005, an investigator called JL Squared and spoke with a female who said she was in the human resources department and who verified that Jenkins worked the day shift and was currently "at work." Second, investigators observed Jenkins entering JL Squared on November 11, noting that she exited "the vehicle and quickly enter[ed] the business, using no guarded motions."  Rodriguez Decl. ¶8b, Ex. 2.  As a result of its investigation, UniCare terminated disability benefits on November 23, 2005.

On December 1, 2005, UniCare forwarded its findings to Gretchen Easton, Ford's personnel administrator at the plant.  Easton gave the information to Lee Rainey, senior labor representative at the plant.  Rainey sent Jenkins a letter requiring her to report to work on December 15, 2005.  On that date, he met with

Jenkins and a union representative.  Rainey told Jenkins that he suspected she was working for JL Squared.  Jenkins responded that she did in fact go frequently to JL Squared, but that rather than working, she merely slept on a couch there.  Because of her condition, she testified, she did not want to be alone in case a medical emergency arose.  Jenkins Decl. ¶8.  Rainey rejected this explanation and fired Jenkins for moonlighting while she was on FMLA leave from Ford.

Jenkins is steadfast in her assertion that she was not actually moonlighting.  She submits her own affidavit to that effect, as well as support from her husband and a vendor of JL Squared.  Her husband testified that Jenkins was not employed there in 2005.  Additionally, the company had only seven employees and no human resources department.  At that time, no female employees had authority regarding human resources or personnel issues.  Jason Jenkins Decl. ¶¶ 4-9.  Jenkins also submits an affidavit from Ty Guernsey who was a vendor for JL Squared.  Guernsey testified that during the fall of 2005, "LeAnn Jenkins was ill, and I often saw her sleeping on the couch at JL Squared."  Guernsey Decl. ¶ 5.  He also asserted that he never saw her working in 2005.  *Id.* at ¶ 6.  For purposes of summary judgment, Jenkins gets the benefit of the factual disputes, so the court must assume she was not actually working for JL Squared.

After her termination, Jenkins proceeded through the union's grievance process.  That grievance was denied in April 2007.  At that point, Jenkins did take a job with JL Squared.

*Evidentiary Challenges*

Both parties challenge the admissibility of some evidence offered by the other side.  Plaintiff objects to many key statements of Rodriguez as hearsay.  Rodriguez repeatedly testified as to what the investigators for MJM told her, including what unidentified people told them.  These statements are admissible, however, so long as they are not offered to prove the truth of the matters asserted.  See Fed. R. Evid. 801(c).  The evidence is admissible to show the basis for Rainey's *belief* that Jenkins was moonlighting, but not to show that Jenkins was in fact moonlighting.

Along those lines, however, UniCare's final determination that Jenkins was not "wholly and continuously disabled" and the medical records where Jenkins said she was working two jobs are inadmissible hearsay and will not be considered by the court.  Ford does not show that Rainey knew about this information when he made his decision on December 15th, so the evidence could not be admitted on the theory that it merely shows a basis for his belief.

Ford's evidentiary challenges fall into two discrete categories.  First, Ford challenges the admissibility of its conduct during the grievance process, including settlement offers made to Jenkins while the grievance was pending.  Second, Ford challenges the relevance of various statements about notice Ford provided regarding how much medical leave time Jenkins had taken.  With regard to the

grievance process, all evidence is admissible except for an offer of reinstatement. The evidence (apart from the reinstatement offer) provides evidence relevant to Ford's assertion that Jenkins failed to mitigate her damages (though the court does not reach that issue). The actual offer of reinstatement was made in the course of settlement negotiations. The court does not reach the issue whether Jenkins has offered the evidence of the offer for a purpose permitted under Federal Rule of Evidence 408(a). As for the FMLA notice requirements, that evidence relates to an inquiry about whether Ford lived up to its duties under the FMLA, another issue the court does not reach, so a ruling on its admissibility is unnecessary.[1]

---

[1]Ford objected in its reply brief to eight factual statements offered by Jenkins, and Jenkins thus filed a surreply brief allowed by Local Rule 56.1(d). Ford's motion to strike Jenkins' surreply brief is denied. Local Rule 56.1(d) allows a non-moving party to file a surreply to respond to challenges to that party's evidence and arguments on the admissibility of its own evidence. To the extent that the surreply brief contained repetitious argument, the court does not believe it is swayed by the number of times a party repeats the same argument.

*Discussion*

Ford's principal argument for summary judgment is its claim that Rainey's decision to fire Jenkins was based on an honest belief that Jenkins was working at JL Squared while she was on FMLA leave from Ford.  The court does not reach the other issues raised by Ford.[2]


A retaliation claim under FMLA is analyzed under the familiar rubric of Title VII discrimination claims.   A plaintiff can succeed under either the direct or indirect methods of proof.  *Buie v. Quad/Graphics Inc.*, 366 F.3d 496, 503 (7th Cir. 2004).   In this instance, Jenkins is proceeding under the indirect method of proof. She must present a prima facie case under the *McDonnell Douglas* burden-shifting framework.  *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 800-806 (1973); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999).   Jenkins must come forward with evidence that (1) she took FMLA leave; (2) she was performing her job satisfactorily; (3) despite her job performance, she suffered an adverse employment action; and (4) she was treated worse than similarly situated employees who did not take FMLA leave. If the plaintiff does so, the burden shifts to the defendant to articulate a legitimate and non-retaliatory reason for its

---

[2]Ford also argues that Jenkins had exceeded her allowable FMLA leave time and that Jenkins failed to mitigate her damages. Ford raises the issue of Jenkins exhausting her FMLA time in part to defend against an FMLA interference claim that was not specifically raised by Jenkins.   Even if Jenkins were arguing interference, "an employer has not violated the FMLA if it refused to reinstate the employee based on an 'honest suspicion' that she was abusing her leave."  *Vail*, 533 F.3d at 909.

decision.  If the defendant states such a reason, the burden then shifts back to the plaintiff to come forward with evidence that the proffered reason was mere pretext, which permits an inference of illegal motive.  *King*, 166 F.3d at 892.

Even assuming that Jenkins presented a prima facie case for discrimination, Ford asserts that Rainey terminated her employment based on his honest belief that she was moonlighting at JL Squared.  In support of its position, Ford relies on *Kariotis*, where an employee filed suit under a number of federal statutes, including the FMLA, challenging her termination.  Navistar was suspicious of the extended time Kariotis took to recover from knee replacement surgery.  It hired a company to videotape her movements.  Two members of management then personally analyzed the tapes and decided that Kariotis was violating the medical leave policy.  Management refused to consult with doctors and relied exclusively on the videotape and the opinion of the two management employees who viewed the tape.  Although that investigation "left something to be desired," Navistar was granted summary judgment because "whatever curious process a company employs to reach its decision is irrelevant so long as nothing in the record suggests that the process is discriminatory. . . ."  *Kariotis*, 131 F.3d at 675, 679.

Despite its apparent similarities with this case (the included FMLA allegation, the surveillance, the dispute over whether the termination was correct), Jenkins fails even to mention *Kariotis* in either her response or surreply brief.

*Kariotis* appears to govern this dispute, and the factual situation here is much less murky than that in *Kariotis*.  Ford did not conduct its own investigation to target an employee.  The pertinent investigation was conducted by UniCare, a third-party benefits provider.  In *Kariotis*, the defendant provided a letter from her doctor claiming the charge of disability fraud "preposterous."  *Id.* at 675.  Here, the only evidence Rainey had that was favorable to Jenkins was provided by Jenkins herself.  This situation, where an independent investigator reported information that suggested Jenkins was employed elsewhere while on disability and medical leave, fits well within the parameters of *Kariotis*.  The Seventh Circuit recently followed *Kariotis* in the FMLA setting.  *Vail*, 533 F.3d at 909-10 (affirming grant of summary judgment where off-duty police officer had seen employee working for husband's lawn mowing business the day after she had taken medical leave during the evening shift).[3]

Ford also relies on *Crouch*, where the employer arranged to videotape the employee while he was on FMLA leave.  The videotaping included the employee doing yard work.  The employee wanted reinstatement but was denied:  "even an employer's honest suspicion that the employee was not using his medical leave for its intended purposes is enough to defeat the employee's substantive rights FMLA

---

[3]Jenkins does not attempt to distinguish *Kariotis*, but one clear difference between *Kariotis* and *Vail* and Jenkins' claim is that the employers in those two cases had suspicions before they conducted surveillance.  In this case, however, the lack of previous suspicion actually weighs in favor of Ford, which did not conduct its own investigation and relied wholly on a third party who would not be serving an ulterior motive for Ford.

claim." *Crouch*, 447 F.3d at 986.  Jenkins also fails to distinguish *Crouch* in either her response or surreply brief.

Rather than respond to these specific on-point precedents from the Seventh Circuit, Jenkins prefers to argue that Ford's decision must be not only honest but also reasonable.  She emphasizes the fact that Ford did not know the names of people who allegedly worked for JL Squared, did not interview the private investigators, and gave no meaningful opportunity to Jenkins to explain the situation.  The crux of Jenkins' argument is that while Rainey found her explanation "insufficient," he treated "an unverifiable statement by an unknown person to an unknown person [as] worthy of an 'honest belief.'"  Pl. Br. at 12.

At some outer limit, this line of argument can be valid.  At the outer bounds, extreme unreasonableness of an employer's decision would allow an inference that it is not honest.  Thus Jenkins' suggestion that Ford's position would allow Rainey to base his decision on dreams that Martians told him that Jenkins was moonlighting is misplaced.  Such a fantastic notion would undermine the possibility that the belief is honest.[4]

---

[4]The point is analogous to the way courts and juries decide whether a taxpayer acted "willfully" in prosecutions for income tax fraud.  In those cases, the Supreme Court holds that the jury may not be instructed to disregard the defendant's evidence that he honestly believed that he was not required to pay taxes on wages, for example, but "the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties. . . ."  *Cheek v. United States*, 498 U.S. 192, 203-204 (1991).

The problem with Jenkins' argument is that there was nothing so fantastic about Rainey's belief in this case. The Seventh Circuit has laid out in *Kariotis* a similar situation that satisfies the "honest belief" standard. Jenkins fails to explain how her factual situation is different. In *Kariotis*, managers with no medical training analyzed a video to determine the health of the employee and specifically ignored advice to have a trained doctor examine the tape. Here, Rainey was notified by UniCare that Jenkins was moonlighting at JL Squared. He was told that private investigators had contacted the company, had been told that she worked there, and had observed her entering the premises. The information available to Rainey provided a much stronger basis for believing that Jenkins was violating her FMLA leave than was the case in *Kariotis*.[5]

Other courts have criticized the "honest belief" standard adopted in *Kariotis*. See *Clay v. UPS*, 501 F.3d 695, 713-14 (6th Cir. 2007) (addressing Title VII claims); *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998) (addressing claim under Americans with Disabilities Act); *Jennings v. Mid-American Energy Co.*, 282 F. Supp. 2d 954, 962-63 (S.D. Iowa 2003) (FMLA claim). The Seventh Circuit's "honest belief" standard is well established as applied to employment discrimination laws that focus on the employer's subjective motivation. The most relevant criticism here is that the "honest belief" standard does not fit as well with

---

[5]Apparently the private investigators had a videotape of Jenkins entering JL Squared, but Rainey never requested to see the video. It is unclear whether Ford had the video or Rainey watched it before firing Jenkins. Even assuming that Ford knew about the tape and did not attempt to see it, what was on the tape (Jenkins entering JL Squared) was not disputed by Jenkins.

an employee's rights under the FMLA because the FMLA gave Jenkins the *substantive* right to twelve weeks a year of unpaid medical leave.   Under the reasoning of *Karitois, Crouch*, and *Vail*, even if Jenkins was not actually violating the terms of the leave, Ford was still entitled to fire her and deny her these substantive rights based merely on its "honest belief."   Nevertheless, this court must of course follow Seventh Circuit law, so these three cases control.

While Jenkins does not cite any FMLA cases regarding "honest belief," she relies on an age discrimination case where summary judgment for the employer was reversed.   In *Duncan v. Fleetwood Motor Homes of Indiana, Inc.*, 518 F.3d 486 (7th Cir. 2008), the employer claimed to have reassigned the employee because he did not meet the physical demands of the position.   The plaintiff, a material handler, had been under physical restrictions but showed that even when under restrictions, he had "never missed a day of work or evaded the normal duties of a material handler.   Then after his doctor lifted all restrictions Duncan continued to perform exactly the same tasks as all other material handlers. . . ."   *Id.* at 492. That situation is completely different from Jenkins' case.   The plaintiff in *Duncan* was proving on a daily basis that he could perform the requirements of the job. "We are mystified, then, that Fleetwood would say Duncan could not perform the job of material handler when he was doing exactly that on a daily basis without incident or criticism."   *Id.*   If Rainey had traveled to JL Squared every day and had seen Jenkins resting on the couch, and had then fired her for moonlighting, that belief would not have been honest, and a denial of summary judgment consistent

with *Duncan* would be appropriate.  But on this record, there is no doubt as to whether Rainey honestly believed his stated reason for firing Jenkins.

Jenkins also attempts to attack the honesty of Rainey's belief by asserting that Ford was "head-hunting" to avoid paying buyouts to its employees.  In essence, she argues that the moonlighting claim was pretext for an attempt to trim the payroll.  Jenkins' evidence of this motive is hearsay, a statement by Ross Hughs based on what a union representative had told him.  Hughs Decl. ¶ 4. Even if it were admissible (and it is not to prove the truth of the matter), the facts surrounding Jenkins' dismissal do not support a finding of pretext.  Most important, the finding of pretext must be related to the alleged right infringed. Jenkins' pretext argument is not that she was fired because of her use of FMLA time but that she was fired because of Ford's efforts to lower its head count.  If that is correct, then Ford would not have violated the FMLA but might have violated the terms of the collective bargaining agreement.  This court has no authority to decide in this case whether the termination violated the union contract.

Even if Jenkins' theory had legal validity, the finding of an effort to undermine Rainey's honest belief is also not plausible given the record. Ford itself did not conduct the inquiry into Jenkins' employment.  The undisputed record shows that Ford did not find out about UniCare's investigation until it reported its findings to Ford personnel.  At that point, Ford had received word from what

it reasonably deemed was a competent source that an employee on leave was moonlighting, and it was certainly within its rights to fire an employee if she was moonlighting while on medical leave.

Jenkins points to a line in the communication from UniCare that states "I think you will be pleased" about the report of Jenkins' second employment.  In the context of additional evidence of previous concerted activity between UniCare and Ford, perhaps this email would have force.  Instead, it is one ambiguous line that, based on the evidence proffered, at best means that Ford was looking to lay people off and now had a legitimate reason to do so with Jenkins.  If she was in fact working for JL Squared, Ford certainly had the right to terminate her employment.

Finally, Jenkins argues that a finding for Ford will give incentives to an employer not to perform thorough investigations.  Jenkins is not the first plaintiff to raise this critique of the "honest belief" standard, but Seventh Circuit law is now settled on the issue.  See *Vail*, 533 F.3d at 909.  Therefore, so long as Ford had an honest belief that she was working at JL Squared, it did not fire her for exercising her rights under the FMLA.

*Conclusion*

For the foregoing reasons, Ford's motion for summary judgment (Dkt. No. 28) is granted.  Final judgment shall be entered accordingly.


So ordered.


Date: December 1, 2008
_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Michelle E. Coburn
WALLER LANSDEN DORTCH & DAVIS LLP
michelle.coburn@wallerlaw.com

Stanley E. Graham
WALLER LANSDEN DORTCH & DAVIS PLLC
stan.graham@wallerlaw.com

David E Kress Jr.
DANN PECAR NEWMAN & KLEIMAN PC
dkress@dannpecar.com

Mark Richard Waterfill
DANN PECAR NEWMAN & KLEIMAN
mwaterfill@dannpecar.com